2025 IL App (1st) 250976-U

No. 1-25-0976B

First Division
August 28, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) | No. 25 CR 2228 |
| | ) | |
| MITCHELL JAMES, | ) ) | Honorable Susana Ortiz and |
| Defendant-Appellee. | ) ) ) | Thomas Joseph Hennelly Judges, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court did not err in denying defendant's pretrial release where the State carried its burden under the Code of Criminal Procedure.

¶ 2    Defendant Mitchell James appeals from the circuit court's orders denying his pretrial release pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4      On January 23, 2025, defendant was arrested and charged with unlawful possession of a firearm by a repeat felony offender (720 ILCS 5/24-1.7(a) (West 2022)). The next day, the State filed a petition for a pretrial detention hearing, alleging that defendant posed a real and present danger to public safety.

¶ 5      A detention hearing was held on January 24, 2025, before Judge Susana Ortiz. The State proffered that at approximately 4:45 a.m. on January 23, officers initiated a traffic stop of a Chevy sedan after observing the vehicle run a red light. Defendant was in the front passenger's seat and defendant's brother, Dante James (Dante), was the driver. They were the only two occupants of the Chevy.

¶ 6      The officers activated their emergency equipment, but the Chevy did not immediately pull over. As the Chevy eventually slowed to a stop, defendant "bent at the waist and made movements towards the floorboard." Officers approached the Chevy and ordered defendant and Dante to exit the vehicle. As they did so, the officers observed a firearm "between the [front passenger's] door and the [front passenger's] seat." Police recovered the weapon, which they discovered to be a loaded 9-millimeter handgun with "one in the chamber."

¶ 7      The State further proffered that defendant had an extensive criminal history with 11 felony convictions, three misdemeanor convictions, and 18 "parole warrants." Most recently, defendant was sentenced to 8 years in prison for a 2020 conviction for being a felon in possession of a firearm.[1] He had completed parole for that conviction in November 2024, approximately two months before being arrested for the current offense. Based on this criminal background and the

---

[1] The record fails to provide an explanation for defendant's early release.

facts surrounding his latest arrest, the State argued that detention was appropriate because defendant posed a real and present threat to the safety of the community.

¶ 8    Judge Ortiz agreed with the State, opining that "based upon his 11 felony convictions, his previous firearms convictions, the immediate accessibility of this firearm in a vehicle at 4:00 something in the morning, [defendant] is a clear and present danger to the community and to the officers who are encountering him at that time." Judge Ortiz also found that the State had proven that no conditions on release would mitigate defendant's dangerousness because his criminal history demonstrated that he would continue to possess firearms illegally. Accordingly, Judge Ortiz granted the State's petition and ordered defendant be detained.

¶ 9    On April 30, 2025, defendant filed a "Motion to Reconsider Detention and Grant Pretrial Release" in the circuit court seeking reconsideration of the court's prior ruling and his release with whatever "conditions that it deems appropriate." Specifically, defendant's motion argued that the State failed to prove that he possessed the firearm in question because the weapon was not found under his seat, but rather between his seat and the front passenger's door. Defendant also argued that he did not have knowledge of the firearm, which he asserted was more likely placed in the vehicle either by Dante or Iris Djurojulov, who was Dante's girlfriend and the registered owner of the gun.

¶ 10    Defendant's motion further contended that he was not a danger to the public because he had no violent criminal convictions and was, in the words of the arrest report, "extremely compliant" with the arresting officers in this case. Defendant also asserted that although the weapon was loaded, it was "not chambered, which is indicative of not having an intent to use the firearm."

¶ 11     Finally, defendant argued that the court could set conditions on his release that would be sufficient to mitigate any danger he might pose. As mitigating evidence, defendant offered that he was a lifelong resident of Cook County who cared for his teenaged daughter and elderly mother. He was also a high school graduate, was employed at Elite Staffing for about one year prior to his arrest and helped mentor at-risk youth through his church.

¶ 12     A hearing on defendant's motion was held on May 15, 2025, before circuit court judge Thomas Joseph Hennelly. Defendant presented arguments similar to those contained in his motion, adding that testing did not show his fingerprints on the recovered firearm. Defendant requested that the circuit court reconsider its previous denial of pretrial release and place him on "pretrial home confinement." Judge Hennelly noted that defendant was in possession of a loaded firearm despite having 11 felony convictions. Thus, Judge Hennelly stated, "I don't think anything's changed to me that would alter Judge Ortiz's decision in the first place. I am in agreement with that. Although I have considered pretrial release, it is respectfully denied again."

¶ 13     This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15     Under the Code, all defendants are presumed eligible for pretrial release, and that presumption is overcome only in certain limited circumstances. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). When the State files a petition for pretrial detention, it must prove by clear and convincing evidence that (1) "the proof is evident or the presumption is great" that the defendant has committed a detainable offense, (2) "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case," and (3) no condition or combination of conditions on the defendant's pretrial release are sufficient to mitigate the danger he poses. *Id.* § 110-6.1(e); *People v. Opas*, 2025 IL App (1st) 250208, ¶ 36.

Clear and convincing evidence is the " 'quantum of proof that leaves no doubt in the mind of the factfinder about the truth of the proposition in question.' " *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12 (quoting *In re John R.*, 339 Ill. App. 3d 778, 781 (2003)). This standard requires greater proof than a preponderance of the evidence, but less than the level of proof required at a criminal trial. *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 49. Where, as here, the evidence at the detention hearing consisted solely of proffer and documentary evidence, we determine whether the State carried its burden *de novo. People v. Morgan*, 2025 IL 130626, ¶ 54. Meaning, we stand in the same position as the circuit court judge and grant no deference to the decision of the circuit court. *Id.* ¶¶ 21-22.

¶ 16     On appeal, defendant argues that the State failed to prove each of the three required propositions with clear and convincing evidence. We address each prong in turn.

¶ 17     First, defendant argues that the State failed to prove he committed a detainable offense. Defendant was charged with unlawful possession of a firearm by a repeat felony offender, which defendant does not dispute is a detainable offense under the Code. See 725 ILCS 5/110-6.1(a)(6)(d) (West 2022). A person commits that offense when he possesses a firearm after having been convicted of two or more of certain felony offenses. 720 ILCS 5/24-1.7 (West 2022).

¶ 18     Here, defendant challenges only the element that he possessed the firearm in question. Specifically, he contends that the State's proffer was insufficient to establish his knowledge of the weapon. Instead, he again submits that the firearm was more likely placed in the vehicle by either Dante or Djurojulov, as the officers never saw defendant handle the gun and defendant's fingerprints were not discovered on the weapon.

¶ 19     We disagree. Possession of a firearm can be either actual or constructive. *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 39. Where, as here, the weapon was found near but not on the

defendant's person, the State must prove constructive possession. *Id.* Constructive possession requires that the defendant (1) had knowledge of the presence of the weapon and (2) exercised immediate and exclusive control over the area in which the weapon was found. *Id.*

¶ 20    In this case, the firearm was found between the front passenger's seat and the door. Moreover, the State proffered that the arresting officers were able to spot the weapon immediately as defendant exited the front passenger's seat. Thus, the location of the firearm gives rise to the inference that defendant was both aware of the firearm and exercised immediate control over it. Additionally, the arresting officers observed defendant bending down and making movements near where the firearm was found just moments later. Such furtive movements capable of concealing contraband have long been considered strong evidence of constructive possession. See, *e.g.*, *People v. Grant*, 339 Ill. 3d 792, 798-99 (2003) (the defendant's knowledge of a firearm could be inferred where officers observed him make movements towards the passenger seat where a firearm was recovered). Although defendant offers alternative speculative theories as to how the firearm came to be in the vehicle, this does not defeat evidence that he constructively possessed the weapon at the time of his arrest. Similarly, the absence of defendant's fingerprints on the firearm does not mean that he did not possess or handle the weapon. Based on the location of the firearm and defendant's movements toward its location while being pulled over by police, the State proved by clear and convincing evidence that defendant was in possession of the firearm. Thus, the State adequately proved that defendant committed a detainable offense.

¶ 21    Second, defendant contends that the State failed to prove he presented a real and present danger to public safety. For support, defendant notes that he was compliant with the arresting officers, was not alleged to have brandished or fired a weapon and received low risk scores from Pretrial Services. However, in evaluating a defendant's dangerousness, the legislature has

empowered the court to consider a multitude of other factors, including "[t]he nature of and circumstances of any offense charged, including whether the offense *** involve[d] a weapon;" "evidence of the defendant's prior criminal history;" whether the defendant is "known to possess or have access to any weapon;" and "[w]hether, at the time of the offense ***, the defendant was on *** parole." 725 ILCS 5/110-6.1(g)(1), (2)(A), (7), (8) (West 2022). In the present case, defendant possessed a loaded firearm despite an extensive history of felony convictions that prohibited him from doing so. We also note that a number of those felony convictions were themselves for defendant's illegal possession of firearms. Indeed, defendant had completed parole for his latest firearm conviction only about two months prior to being arrested for this current offense. Although defendant downplays his lengthy criminal history as "nonviolent" and emphasizes that he did not brandish a weapon, this court has repeatedly "acknowledged the danger of firearm possession *under any circumstances* by an individual legally barred from doing so." *People v. Johnson*, 2024 IL App (1st) 240154, ¶ 20 (finding the defendant posed a danger despite not brandishing a firearm, receiving a low risk assessment from Pretrial Services, and not having committed a violent offense in almost 10 years prior to his arrest); see also *People v. Lee*, 2024 IL App (1st) 232137, ¶ 29; *People v. Parker*, 2024 IL App (1st) 232164, ¶¶ 74-77. Given defendant's proven track record of illegal firearm possession, we find that the circuit court did not err in determining that he posed a real and present danger to the community.

¶ 22 Third, and finally, defendant argues that the State failed to prove that no condition or set of conditions would be sufficient to mitigate any danger posed by his pretrial release. Citing *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 and *People v. White*, 2024 IL App (1st) 232245, ¶ 24, defendant asserts that the State "mistakenly centered its prong three arguments around prong two arguments" without explaining why specific conditions would not suffice.

¶ 23    Defendant is correct that the State's burden on prong three generally requires a more individualized argument than a mere recitation of the facts of the case. As this court noted in *Stock*, "[if] the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release." *Id.* ¶ 20. However, it is not surprising that the State's conditions argument here relied largely on the same facts as its dangerousness argument, as "proof as to the danger presented by a defendant's pretrial release will frequently overlap with the evidence supporting that less restrictive conditions cannot mitigate the threat." *People v. Carpenter*, 2024 IL App (1st) 240037, ¶ 17. A review of the record in this case shows that the State relied primarily on defendant's long and proven history of illegally procuring firearms to establish both his dangerousness and that no conditions short of detention would be sufficient. Both circuit court judges accepted the State's arguments and expressed their belief that defendant would continue to illegally possess firearms unless he was detained. Although our review is *de novo*, we agree with both Judge Ortiz and Judge Hennelly. The State presented undisputed evidence that defendant has 11 felony convictions, including multiple convictions for illegal firearm possession. The State also proved that defendant was arrested again with a loaded handgun just two months after completing parole for an illegal firearm conviction. This distinguishes the present case from both *Stock* and *White*, where neither defendant had any felony convictions, let alone a history of illegal firearm possession. Under the specific facts of the present case, we find that the State proved no condition or set of conditions on defendant's pretrial release would have been appropriate.

¶ 24                                 III. CONCLUSION

¶ 25    For the reasons stated, we affirm the judgment of the circuit court.

¶ 26    Affirmed.