2026 IL App (1st) 260240-U
No. 1-26-0240B
Order filed May 8, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 25 CR 13946 01 |
| | ) | |
| DEAMONTE PARKER | ) | The Honorable |
| | ) | James Michael Obbish |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**Order**

¶ 1     *Held*: Affirmed. The State carried its burden of showing pretrial detention was necessary.

¶ 2     Pretrial decisions often must be made within hours of an arrest, the parties frequently proceed by proffer, and the circuit court does not rule on evidentiary issues.

¶ 3     Deamonte Parker appeals his pretrial detention order entered the day after his arrest under the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). He contends that police officers unlawfully found a loaded firearm on him, and that the

circuit court impermissibly relied on his status as a repeat felony offender in ordering him detained. But Parker overlooks that part of the Code permitting the circuit court to rule as it did as well as parts of the State's proffer supporting the order to detain. So we affirm.

¶ 4                                              Background

¶ 5      The State petitioned to detain Deamonte Parker for being a repeat felony offender in unlawful possession of a firearm (720 ILCS 5/24-1.7(a) (West 2026)). The detention hearing occurred the day after Parker's arrest.

¶ 6      The State proffered that the Chicago police stopped a car with expired plates. Parker was a passenger. During the stop, officers asked if he possessed a Firearm Owner Identification (FOID) card or concealed carry license. Parker replied, "No." Officers noticed his hands shaking, limited eye contact, and an open can of alcohol in a nearby cupholder. They directed Parker to pick up the can and shake it. He did so, and officers heard liquid splashing. They ordered Parker out of the car.

¶ 7      As he left the car, Parker turned away from the officers, concealing his front side. Officers directed him to face forward, and when he did, they saw the brown handle of a firearm poking from his coat pocket. Parker pulled away, stiffening his body as officers detained him. Officers seized a loaded handgun. They again asked if he had a FOID card or concealed carry license, and Parker again replied, "No." An on-scene background check confirmed he did not.

¶ 8      Parker had two other felonies: a 2022 conviction for aggravated unlawful use of a weapon and a 2020 conviction for aggravated unlawful use of a weapon. He received probation for the 2020 conviction, but he failed to satisfy its conditions when the State later charged him with the

2022 offense. On a Public Safety Assessment, Parker scored three out of six for new criminal activity and two out of six for failure to appear.

¶ 9    Defense counsel proffered that, according to Parker's brothers, (i) the car's registration was not expired, (ii) officers often "harassed" this car, and (iii) officers knew Parker. According to Parker, officers immediately unzipped his jacket as he stepped out of the car. Defense counsel also proffered that Parker was a lifelong Cook County resident and lived with his elderly mother, brother, and sister. He had an infant daughter for whom he was the primary caregiver, and cared for his mother. He was recently hired as a forklift operator.

¶ 10    The circuit court ordered Parker detained before trial.

¶ 11    First, the State proved that Parker was a repeat felony offender in unlawful possession of a firearm, though he may later move to suppress the recovered gun.

¶ 12    Second, the State proved Parker posed a real and present threat to the community. The court noted that (i) the legislature increased penalties for felons in possession of firearms, recognizing their inherently dangerous nature and (ii) this arrest was Parker's third in possession of a loaded firearm. The court surmised that at earlier sentencing hearings, Parker would have heard he cannot lawfully possess a firearm. Yet during this arrest, Parker was evasive in responding to officers' orders, "although it may not have risen to the level of a chargeable offense of resisting[.]"

¶ 13    Third, the circuit court found no less restrictive conditions could mitigate the threat Parker posed. "[G]ermane" to its determination was Parker's probation violation, showing a "history of criminality" and "poor decision-making." Moreover, Parker's repeated re-arming undermined

confidence that he could comply with pretrial release conditions. And electronic monitoring would not mitigate the risk because it only monitors Parker's whereabouts, not his activities.

¶ 14    Parker later filed a motion for relief. He included two letters in mitigation from community members. Similarly, the State proffered that Parker's arrest occurred within two years of his completing parole for the 2022 conviction.

¶ 15    After hearing the parties' arguments, the circuit court denied Parker's motion.

¶ 16                                    Analysis

¶ 17    Parker argues the State failed to meet its burden to justify pretrial detention, an issue we review *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51 (holding, *de novo* review proper when parties proceed by proffer).

¶ 18    Under Illinois law, pretrial release is the default. 725 ILCS 5/110-2(a) (West 2026). A court may order detention when the State establishes, by clear and convincing evidence, that (i) the proof is evident or the presumption great that the defendant committed a detainable offense, (ii) the defendant poses a real and present threat to the safety of the community based on the specific, articulable facts of the case, and (iii) no combination of conditions can mitigate that threat. *Id.* § 110-6.1(e).

¶ 19    The State charged Parker with unlawful possession of a firearm by a repeat felony offender, 720 ILCS 5/24-1.7(a) (West 2026), a detainable offense. 725 ILCS 5/110-6.1(a)(6)(D) (West 2026).

¶ 20    For the first element, Parker concedes the State's proffer established elements of unlawful possession of a firearm by a repeat felony offender: (i) prior felony convictions and (ii) possession of a firearm. But he argues the circuit court erred in finding clear and convincing evidence the

proof is evident or the presumption is great that he committed the offense. He focuses on the officers' stop of the car and search of him to contend that the State did not meet its burden of proof because his proffered facts suggest the officers acted unlawfully.

¶ 21 The Code does not support Parker's contention that the State's proffer must contain only admissible evidence. While evidence that the charged crime may have resulted from an unlawful search or seizure "is relevant in assessing the weight of the evidence against the defendant," (725 ILCS 5/110-6.1(f)(6) (West 2026), under Section 110-6.1(f), the State need not prove at this hearing that it possesses *admissible* evidence. *id.* § 110-6.1(f)(5) ("The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.")

¶ 22 Parker does not dispute that the proffer proves the elements of the offense nor does the Code require the State use only admissible evidence in its proffer. Thus, the State carried its burden to prove Parker committed a detainable offense. See *People v. Wright*, 2024 IL App (4th) 240187, ¶ 33 ("Contrary to what defendant argues, the weight of the admissible evidence against him is merely one part of the calculation, not a prerequisite for detention.").

¶ 23 For the second element, dangerousness, Parker asserts the parties' proffers canceled each other out, and the elements of the offense cannot support this finding.

¶ 24 Again, the Code does not support Parker's contentions, and the State proved that Parker posed a real and present threat to community safety. As the State notes, the Code directs the circuit court to consider many factors, including two pertinent factors here: (i) whether the crime involved a weapon and (ii) whether the defendant is known to possess or have access to weapons. 725 ILCS 5/110-6.1(g)(1), (7) (West 2026). Parker does not contest that he was found in possession of a

firearm or that this arrest was his third overall for unlawful possession of firearms. These proffered facts satisfy two enumerated elements. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 27 ("inherent dangerousness of firearms, particularly when they are in the possession of those who have been prohibited from possessing them"). Further, the proffered evidence showed that, while armed with a loaded gun, Parker was near an open can of alcohol while acting evasively during the stop. See *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 45 (intoxication and resistance to police may support finding of dangerousness).

¶ 25 For the third element, threat mitigation, Parker argues the State lacked evidence to support finding conditions short of pretrial detention would not mitigate the threat he posed to the community. See *People v. Cousins*, 2025 IL 130866, ¶ 30 (State must present sufficient evidence to permit court to determine whether pretrial release was appropriate). But Parker overlooks the nature and circumstance of his offenses described in the proffer. See *People v. Mikolaitis*, 2024 IL 130693, ¶ 20 (discussing factors relevant to proving third element).

¶ 26 This arrest was his third unlawful possession of a firearm. After the first, he received probation that ended with his second arrest. During the third arrest, he acted evasively and was near an open alcohol can. Given these proffered facts, the circuit court properly concluded that less restrictive conditions like curfew, house arrest, or electronic monitoring would not protect the community. See 725 ILCS 5/110-5(a)(3)(A)-(B) (West 2026) (permitting court to consider "likelihood of compliance by the defendant with all the conditions of pretrial release").

¶ 27 The proffer's clear and convincing evidence supports the decision. *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12 (defining standard). Pretrial detention is necessary.

¶ 28 Affirmed.